**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| |
|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>FILMTEC CORPORATION,<br><br>        Defendant. |

## COMPLAINT

The United States of America ("United States"), by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action brought against FilmTec Corporation ("FilmTec") pursuant to Sections 113(b) and 167 of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7413(b) and 7477, seeking injunctive relief and civil penalties for violations of: (1) its facility-wide volatile organic compound ("VOC") emission limit contained in its state-issued Title V permit; (2) the Prevention of Significant Deterioration ("PSD") provisions of the CAA, 42 U.S.C. §§ 7470–92; and (3) the regulations under the federally approved and enforceable Minnesota State Implementation Plan ("Minnesota SIP") that implement the PSD and Title V permitting programs. As a result of these violations, FilmTec emitted more VOCs than allowed by law.

1

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over the subject matter of this action pursuant to Sections 113(b) and 167 of the CAA, 42 U.S.C. §§ 7413(b) and 7477, and pursuant to 28 U.S.C. §§ 1331, 1345, 1355.

3. Venue is proper in this District pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b), (c), and 1395(a), because the violations which constitute the basis of this complaint have occurred and are occurring in this District and the Facility is located in this District.

**NOTICES**

4. On September 4, 2015, and April 29, 2016, EPA issued Notices and Findings of Violation ("NOV/FOVs") to FilmTec for violations of the CAA and the Minnesota SIP, in accordance with CAA Section 113(a)(1), 42 U.S.C. § 7413(a)(1). Pursuant to 42 U.S.C. § 7413(a)(1), EPA provided copies of the NOV/FOVs to the State of Minnesota.

5. The United States has provided notice of the commencement of this action to the Minnesota Pollution Control Agency ("MPCA") as required by Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

**AUTHORITY**

6. Authority to bring this action is vested in the Attorney General of the United States by Section 305 of the CAA, 42 U.S.C. § 7605, and pursuant to 28 U.S.C. §§ 516 and 519.

**THE DEFENDANT**

7. FilmTec owns and operates a facility located at 5400 Dewey Hill Road, Edina, Hennepin County, Minnesota ("Facility") that manufactures water filtration products for domestic and commercial use. Until 2016, FilmTec manufactured the water filters on four

manufacturing lines, known as Lines 200, 300, 400, and 500. FilmTec completed construction of a new manufacturing line, Line 600, in the fall of 2016.

8. FilmTec is the owner and operator of the Facility and the water filter manufacturing lines there.

9. FilmTec operates the Facility pursuant to Minnesota Total Facility Operating Permit No. 05301149-003 ("Title V permit"), issued in 2011. The Title V permit limits the Facility's total VOC emissions to 235 tons per year ("TPY").

10. FilmTec is a Delaware Corporation registered as a foreign business corporation in the State of Minnesota and authorized to do business in the Minnesota.

11. FilmTec is a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

## STATUTORY AND REGULATORY BACKGROUND

12. The Clean Air Act is designed to protect and enhance the quality of the nation's air, so as to promote the public health and welfare and the productive capacity of its population. CAA Section 101(b)(1), 42 U.S.C. § 7401(b)(1).

### I. NATIONAL AMBIENT AIR QUALITY STANDARDS

**A. General**

13. Section 108(a) of the CAA, 42 U.S.C. § 7408(a), requires EPA to list, and issue air quality criteria for, each air pollutant that may endanger public health or welfare and results from numerous mobile or stationary sources.

14. Section 109(a) of the CAA, 42 U.S.C. § 7409, requires EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS") for those air pollutants for which air quality criteria have been issued pursuant to

Section 108 of the CAA. Under Section 109(b) of the CAA, 42 U.S.C. § 7409(b), the primary NAAQS must protect public health with an adequate margin of safety, and the secondary NAAQS must protect the public welfare from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.

15. Pursuant to Sections 108 and 109 of the CAA, 42 U.S.C. §§ 7408 and 7409, EPA issued NAAQS for, *inter alia*, ozone (which is created by chemical reactions between oxides of nitrogen and VOCs). The ozone NAAQS are set forth in 40 C.F.R. §§ 50.9, 50.10, 50.15, and 50.19.

16. Pursuant to Section 107(d) of the CAA, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant or where the air quality cannot be classified due to insufficient data. An area that meets the NAAQS for a particular pollutant is an "attainment" area. An area that does not meet the NAAQS is a "nonattainment" area. An area that cannot be classified due to insufficient data is "unclassifiable." Air quality designations for states are approved by EPA and located at 40 C.F.R. Part 81.

17. FilmTec's Facility is located in Hennepin County, Minnesota. At all times relevant to this Complaint, the Facility was located in an area designated as being in attainment or unclassifiable for ozone.

**B. State Implementation Plan**

18. Pursuant to 42 U.S.C. § 7410, each state must adopt and submit to EPA for approval a plan that provides for the implementation, maintenance, and enforcement of the NAAQS in each air quality control region within each state. CAA § 110(a)(2)(A), 42 U.S.C. § 7410(a)(2)(A).

19.     After such provisions are approved and/or promulgated by EPA, these provisions constitute a state implementation plan or "SIP." A SIP is enforceable by the respective state in which it applies and by the United States, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

## II.  CLEAN AIR ACT PERMITTING REQUIREMENTS

20.     There are two sets of Clean Air Act permitting requirements relevant here for owners and/or operators of major sources of air pollution: New Source Review and Operating Permits (also known as "Title V").

21.     In general, New Source Review permitting requires operators to obtain a permit and comply with technology-based emission limits before constructing a major source of air emissions or making a major modification to an existing major source of emissions. The exact requirements applicable to a facility are based on whether the facility is located in an area that is in attainment for the pollutants that will be released from the newly-constructed or modified facility. An operator seeking to construct or modify a facility that will result in a major increase of a pollutant in an area that is classified as an "attainment" area for that same pollutant must obtain a New Source Review Prevention of Significant Deterioration ("PSD") permit. Operators seeking to construct or modify a facility that will result in a major increase of a pollutant in an area that is classified as a "nonattainment" area for that same pollutant must obtain a New Source Review Non-Attainment ("NA-NSR") permit.

22.     FilmTec's Facility is subject to PSD permitting for VOCs because it is located in an attainment area for ozone.

23.     Title V of the Clean Air Act requires all operators of major sources of air pollution to obtain Title V permits. 42 U.S.C. § 7661a(a).

5

A. **Prevention of Significant Deterioration ("PSD") Requirements**

1. **PSD Program in General**

24. Part C of Title I of the CAA, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration of air quality in those areas designated as either attainment or unclassifiable for purposes of meeting the NAAQS.

25. Section 165(a)(1) of the CAA, 42 U.S.C. § 7475(a)(1), prohibits the construction and operation of a "major emitting facility" in an area designated as attainment or unclassifiable unless, among other things, a permit has been issued that comports with the requirements of Section 165 of the CAA (typically called a "PSD permit").

26. A "major emitting facility" includes any source "with a potential to emit two hundred and fifty tons per year or more of any pollutant." 42 U.S.C. § 7479(1).

27. The term "construction" includes a modification (as defined in 42 U.S.C. § 7411(a)) of any source or facility. 42 U.S.C. § 7479(2)(C).

28. In addition to the requirement to secure a PSD permit, Section 165(a)(4) of the CAA, 42 U.S.C. § 7475(a)(4), prohibits the construction and operation of a major emitting facility unless, among other things, the facility applies the best available control technology ("BACT") for each pollutant subject to regulation under the CAA that is emitted from the facility.

29. "Major stationary source" is defined to include "any stationary source which emits, or has the potential to emit, 250 tons per year or more of a regulated NSR pollutant." 40 C.F.R. § 52.21(b)(1)(i)(b).

30. "Major modification" is defined as "any physical change in or change in the method of operation of a major stationary source that would result in: a significant emissions

6

increase (as defined in [40 C.F.R. § 52.21(b)(40)]) of a regulated NSR pollutant (as defined in [40 C.F.R. § 52.21(b)(50)]); and a significant net emissions increase of that pollutant from the major stationary source." 40 C.F.R. § 52.21(b)(2)(i).

31. "Significant Emissions Increase" is defined as "an increase in emissions that is significant (as defined in [40 C.F.R. § 52.21(b)(23)]) for that pollutant." 40 C.F.R. § 52.21(b)(40).

32. "Net emissions increase" means "the amount by which the following exceeds zero: (a) [t]he increase in emissions from a particular physical change or change in the method of operation at a stationary source as calculated pursuant to [40 C.F.R. § 52.21(a)(2)(iv)]; and "[a]ny other increases and decreases in actual emissions at the major stationary source that are contemporaneous with the particular change and are otherwise creditable." 40 C.F.R. § 52.21(b)(3)(i).

33. "Significant," in reference to a net emissions increase of VOCs, is 40 tons per year. 40 C.F.R. § 52.21(b)(23)(i).

**2. PSD Regulations Applicable in this Case**

34. Sections 110(a) and 161 of the CAA, 42 U.S.C. §§ 7410(a) and 7471, require that each state implementation plan have emission limitations and such other measures as may be necessary to prevent significant deterioration of air quality in areas designated as attainment or unclassifiable.

35. A state may comply with Sections 110(a) and 161 of the CAA, 42 U.S.C. §§ 7410 and 7471, by having its own PSD regulations approved by EPA as part of its SIP. In that case, the state PSD regulations must be at least as stringent as the federal regulations. If a state does not have a PSD program that has been approved by EPA and incorporated into the state's SIP,

then the federal PSD regulations set forth at 40 C.F.R. § 52.21 are incorporated by reference into the SIP. 40 C.F.R. § 52.21(a).

36. On August 7, 1980, EPA disapproved Minnesota's proposed PSD program and incorporated by reference into the Minnesota SIP the federal PSD regulations of 40 C.F.R. § 52.21(b) through 52.21(w). 45 Fed. Reg. 52741 (Aug. 7, 1980). On January 29, 1981, EPA delegated to Minnesota the authority to implement and enforce the federal PSD program that had previously been incorporated into the Minnesota SIP. 46 Fed. Reg. 9580 (Jan. 29, 1981). Minnesota continues to implement the federal PSD program and incorporates these rules by reference in its administrative code. MINN. R. 7007.3000 (2018).

### B. Operating Permit ("Title V") Requirements

37. Title V of the CAA, 42 U.S.C. §§ 7661-7661f, sets the operating permit requirements applicable to "major sources" subject to the construction permitting requirements of Part C of the Title I of the CAA. These requirements are designed to enable EPA and state agencies to efficiently and effectively implement the CAA, and better monitor and enforce compliance.

38. A "major source" for purposes of Title V, is defined in part as a source that emits or has the potential to emit 10 tons per year or more of any HAP, or 100 tons per year or more of any criteria pollutant. 42 U.S.C. § 7661(2).

39. FilmTec's Facility has the potential to emit more than 100 tons per year of VOCs, which is a criteria pollutant. It is therefore a major source of air pollution, requiring FilmTec to operate in compliance with a permit issued under Title V of the Clean Air Act.

8

40. In 2001, EPA granted final approval to Minnesota's Title V operating permit program, which is codified at 40 C.F.R. Part 70, Appendix A. 66 Fed. Reg. 62,967 (Dec. 4, 2001).

41. Section 502(a) of the CAA, 42 U.S.C. § 7661a(a), the implementing regulations at 40 C.F.R. § 70(b), and the Minnesota Title V operating permit program have at all relevant times made it unlawful for any person to operate a major source of criteria pollutants except in compliance with a permit issued under Title V.

## ENFORCEMENT PROVISIONS

42. Under the CAA, the EPA Administrator may bring a civil action for civil penalties and appropriate relief, including a temporary or permanent injunction, when any person violates the CAA or its implementing regulations. 42 U.S.C. § 7413(b).

43. Any person who violates any requirement of the CAA, or its respective implementing regulations, is subject to a maximum statutory civil penalty of $25,000 per day for each violation, as adjusted for inflation, with each day in which a violation occurs constituting a separate violation. 42 U.S.C. § 7413(b).

44. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996 and the Federal Civil Penalties Inflation Adjustment Act of 2015, 28 U.S.C. § 2461 note: Pub. L. 114-74, Section 701, the maximum statutory civil penalties under the CAA have been adjusted for inflation at 40 C.F.R. § 19.4. The applicable civil penalty levels for violations of CAA have increased to $37,000 per day for each violation occurring after January 12, 2009, and through November 1, 2015. The maximum civil penalty per day for each violation of the CAA after November 2, 2015, is $93,750. *Id.*

## GENERAL ALLEGATIONS

45. On June 11, 2014, EPA conducted a CAA inspection of FilmTec's Edina Facility (the "June 2014 CAA Inspection").

46. FilmTec increased the speed of manufacturing Lines 400 and 500 by at least 15% in February 2012. The increased line speeds also increased the Facility's potential-to-emit to 326 TPY in 2013, the first full year of operations after the improvements were completed. As a result, the Facility is a major source pursuant to the Minnesota SIP, and Federal PSD regulations.

47. Beginning in at least 2012, FilmTec's annual VOC potential-to-emit exceeded the major source threshold of 250 TPY established in the Minnesota SIP and Federal PSD regulations.

48. Beginning in 2014, FilmTec's annual VOC emissions exceeded the facility wide permit limit of 235 TPY.

49. In 2014, FilmTec commenced construction of manufacturing Line 600. FilmTec calculated that the new manufacturing line has the potential-to-emit up to 90 tons of VOCs per year. FilmTec did not secure a PSD construction permit to authorize the construction of the new manufacturing line and did not evaluate whether additional pollution control technology was required to meet BACT requirements for reducing VOC emissions from the new manufacturing line.

## FIRST CLAIM FOR RELIEF—CAA
(Failure to obtain a PSD Permit for a Major Modification)

50. Paragraphs 1-49 of this Complaint are re-alleged and incorporated by reference.

51. The FilmTec Facility is a major stationary source.

52. In 2014, Defendant constructed a new production line. This physical construction was expected to and/or actually did result in a significant net emissions increase in VOCs.

53. Defendant did not comply with the PSD requirements in the Act and the Minnesota SIP with respect to the major modifications and subsequent operations at the FilmTec facility.

54. Defendant has violated and continues to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a), the federal PSD regulations, and/or the Minnesota SIP. Unless restrained by an order of this Court, these violations will continue.

55. As provided in CAA § 113(b), 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations of this claim subject Defendant to injunctive relief and civil penalties in the amounts set forth in Paragraph 44 of this Complaint.

## SECOND CLAIM FOR RELIEF—CAA
(Exceeding Facility-wide Limit for VOCs under Defendant's 2011 Title V Permit)

56. Paragraphs 1-49 of this Complaint are re-alleged and incorporated by reference.

57. Part I B of Defendant's Title V Permit requires Defendant to limit its total facility emissions of volatile organic compounds (VOCs) to no more than 235 tpy. In 2014, FilmTec reported annual emissions of 185 tpy of VOCs. When calculating its emissions, FilmTec used a lower emission factor from a performance test provided to the state under its previous permit instead of engineering test data under its current permit. When properly calculated, FilmTec's actual emissions are greater than 250 tpy.

58. Thus, FilmTec violated its Title V Permit by exceeding facility-wide limits for VOC emissions each year since 2012.

59. Defendant has violated and continues to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a), the federal PSD regulations, and/or the Minnesota SIP. Unless restrained by an order of this Court, these violations will continue.

11

60. As provided in CAA § 113(b), 42 U.S.C. § 7413(b), the violations of this claim subject Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraph 44 of this Complaint.

### THIRD CLAIM FOR RELIEF—CAA
(Failure to Demonstrate Compliance and Identify Deviations in the Manner Specified in Defendant's 2011 Title V Permit)

61. Paragraphs 1-49 of this Complaint are re-alleged and incorporated by reference.

62. The Title V Permit states that FilmTec shall calculate and record the VOC emissions for each month using equations 1, 1a, and 1b in Appendix B of the permit.

63. The Title V Permit states that FilmTec shall calculate and record the HAP emissions for each month using Equation 3 in Appendix B of the permit.

64. After EPA issued the 2015 NOV/FOV, FilmTec disclosed to EPA that it was not demonstrating compliance with 12-month rolling sum limits for VOCs, total HAPs, and single HAP, in a manner consistent with its Title V Permit since 2011.

65. Pursuant to Table B of the Title V Permit, FilmTec is required to submit an annual Compliance Certification within 31 days of each calendar year documenting all deviations experienced during the preceding year. FilmTec failed to identify deviations in its method of demonstrating compliance in its annual compliance certification, thus violating its Title V permit since 2011.

66. Defendant has violated and continues to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a), the federal PSD regulations, and/or the Minnesota SIP. Unless restrained by an order of this Court, these violations will continue.

67.     As provided in CAA § 113(b), 42 U.S.C. § 7413(b), the violations in this claim subject Defendant to injunctive relief and civil penalties in the amounts as set forth in Paragraph 44 of this Complaint.

### PRAYER FOR RELIEF

WHEREFORE, based upon the allegations set forth above, the United States requests that this Court:

1. Order such injunctive relief as is necessary to compel Defendant to comply with the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, its implementing regulations, and any applicable permits;

2. Assess a civil penalty against Defendant for each day of each separate violation of the CAA;

3. Award Plaintiff its costs of this action; and

4. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

Date: July 18, 2019

/s/ Karen Dworkin
KAREN DWORKIN
Deputy Section Chief
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice

_____
SAMANTHA M. RICCI
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

OF COUNSEL:
KATHLEEN KELLY SCHNIEDERS
Associate Regional Counsel
U.S. EPA Region 5
Chicago, IL
77 W. Jackson Blvd.